UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHELLE WALLACH,

                Appellant,

        -against-

KENNETH KIRSCHENBAUM, Chapter 7 Trustee
of the Estate of the Robert Plan Corporation,

                Appellee.
------------------------------------------------------------X

**ORDER**
**11 CV 0795(SJF)**

FILED
IN CLERK'S OFFICE
U S. DISTRICT COURT E.D.N.Y

★ JUN 16 2011 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.,

I.     Introduction

On December 28, 2010, *pro se* appellant Michelle Wallach ("appellant")[1] filed a notice of appeal from an order of the United States Bankruptcy Court for the Eastern District of New York (Grossman, U.S.B.J.) ("the bankruptcy court"), entered December 17, 2010, *inter alia*, approving the application of Kenneth Kirschenbaum ("the Trustee"), the Chapter 7 Trustee of the Estate of the Robert Plan Corporation, to withdraw his motion filed in a consolidated bankruptcy proceeding commenced by The Robert Plan Corporation and The Robert Plan of New York Corporation (collectively, "the RP Corporations") for authorization to sell to appellant the interest, if any, of the estate of the RP Corporations in a proof of claim filed by the Trustee in a Chapter 11 bankruptcy proceeding commenced by Robert Wallach ("the Wallach Chapter 11 proceeding"), a shareholder of the RP Corporations and appellant's spouse. The Trustee moves

---

[1] Although appellant is proceeding *pro se* on this appeal, she is an attorney admitted to practice before the courts of the State of New York.

1

to dismiss the appeal on the basis that appellant lacks standing to appeal the December 17, 2010 order of the bankruptcy court. For the reasons set forth below, the Trustee's motion is granted and the appeal is dismissed.

II.     Background

On or about August 25, 2008, Robert Wallach ("Wallach") filed in the bankruptcy court a voluntary petition under Chapter 11 of the United States Bankruptcy Code which was assigned case number 08-74601-reg ("the Wallach Chapter 11 proceeding"). On that same date, the RP Corporations also filed in the bankruptcy court voluntary petitions under Chapter 11 of the United States Bankruptcy Code ("the Bankruptcy Code"), which were consolidated to proceed under case number 8-08-74573-reg ("The RP Corporations bankruptcy proceeding").

On or about January 19, 2010, the RP Corporations bankruptcy proceeding was converted from Chapter 11 to Chapter 7 under the Bankruptcy Code and the Trustee was appointed the Chapter 7 Trustee of the estate of the RP Corporations.

On or about February 25, 2010, the Trustee filed a proof of claim ("Claim No. 28"), in the sum of six million three hundred ninety-eight thousand dollars ($6,398,000.00), plus interest, in the Wallach Chapter 11 proceeding.

By letter dated August 18, 2010, appellant offered to purchase and receive an assignment of the interest, if any, of the estate of the RP Corporations in Claim No. 28 against Wallach for the sum of five thousand dollars ($5,000.00), subject to higher or better bids and the approval of the bankruptcy court.

On or about September 20, 2010, the Trustee received a check in the sum of five thousand

2

dollars ($5,000.00) from appellant, which was deposited in the account of the estate of the RP Corporations pending the entry of an order approving the sale of Claim No. 28 by the bankruptcy court and the actual sale of Claim No. 28 by the Trustee to appellant.

On or about September 21, 2010, the Trustee filed in the RP Corporations bankruptcy proceeding a motion pursuant to 11 U.S.C. § 363(b) ("the Sale Motion"), seeking authorization to sell to appellant the interest, if any, of the estate of the RP Corporations in Claim No. 28 against Wallach for the sum of five thousand dollars ($5,000.00), subject to, *inter alia*, "higher or better offers."

On or about October 27, 2010, after the deadline for objections to the Sale Motion to be served and filed had expired, the bankruptcy court held a hearing on the Sale Motion, during which the Trustee indicated, *inter alia*: (1) that a sale of Claim No. 28 to appellant for the sum of five thousand dollars ($5,000.00) was in the best interest of the estate of the RP Corporations because Claim No. 28 was "uncertain" and subject to litigation risks and costs; (2) that he, with the assistance of Wallach, had negotiated a settlement of a claim asserted by Wallach against American International Group, Inc. ("AIG"), one of the largest creditors of the RP Corporations, which provided for a payment by AIG to (a) the estate of the RP Corporations in the sum of nine hundred thousand dollars ($900,000.00), and (b) the Wallach estate in the sum of forty thousand dollars ($40,000.00) ("the AIG Settlement"); and (3) that the AIG Settlement was made possible because Wallach understood (a) that appellant was purchasing Claim No. 28 from the Trustee for the sum of five thousand dollars ($5,000.00) and (b) that upon the purchase, appellant would be reducing the amount of Claim No. 28 from six million three hundred ninety-eight thousand dollars ($6,398,000.00), plus interest, to five thousand dollars ($5,000.00). However, the Trustee

expressly indicated that disapproval of the Sale Motion would have no effect on the AIG Settlement. The bankruptcy court adjourned the hearing on the Trustee's Sale Motion until the date scheduled to hear the Trustee's motion to approve the AIG Settlement in the RP Corporations bankruptcy proceeding.

During a hearing on December 8, 2010, counsel for Wallach reiterated that although the sale of Claim No. 28 to appellant may have impacted the negotiations regarding the AIG Settlement, a denial of the sale would not affect the AIG Settlement. The bankruptcy court, *inter alia*, expressed "a good bit of trepidation" regarding the sale of Claim No. 28 but indicated that it would not "second guess the [T]rustee." The bankruptcy judge further stated, in relevant part:

> "I think [the Trustee] met barely a minimum standard here. So the Court will approve [the sale], but again, that's with a good bit of trepidation * * *, and based on the facts in front of [the bankruptcy court]. If the facts end up changing, if [the bankruptcy court] learn[s] facts differently down the road it's not going to change this order, but it could have effects on other things, but [the bankruptcy court] [wi]ll approve [the sale]. So the Court will grant the motion."

(Transcript of Proceedings on December 8, 2010 ["T."], p. 23).

On December 13, 2010, appellant submitted to the bankruptcy court a proposed order, *inter alia*, granting the Trustee's Sale Motion. On that same date, counsel for the Trustee filed a letter with the bankruptcy court indicating that he was withdrawing the Sale Motion based upon the bankruptcy court's expressed "trepidation" in granting the Sale Motion and the Trustee's reservations, upon further reflection, about whether proceeding with the sale of Claim No. 28 to appellant was in the best interests of the estate of the RP Corporations.

On December 15, 2010, the Trustee submitted to the bankruptcy court a proposed order approving the withdrawal of the Sale Motion. On December 17, 2010, the bankruptcy court

4

signed the Trustee's proposed order withdrawing the Sale Motion and authorizing the return of the five thousand dollars ($5,000.00) deposited in escrow to appellant and declined to sign appellant's proposed order granting the Sale Motion. Upon entry of the December 17, 2010 order, the Trustee issued a check to appellant in the sum of five thousand dollars ($5,000.00) and mailed it to her.

Appellant subsequently filed a notice of appeal to this Court of the bankruptcy court's December 17, 2010 order, which was transmitted to this Court on February 17, 2011.

On March 3, 2011, the Trustee filed a letter, in accordance with my individual rules, advising the Court that he had served a motion to dismiss the appeal. Thereafter, the Court entered a bankruptcy scheduling order. Appellant filed her brief on March 8, 2011. In accordance with my individual rules, the Trustee filed his fully-briefed motion to dismiss the appeal on March 30, 2011. In accordance with the Court's bankruptcy scheduling order, the Trustee filed his responsive brief on the appeal on April 4, 2011 and appellant filed her reply brief on April 18, 2011.

III. Discussion

The Trustee seeks dismissal of the appeal on the basis that appellant, as a prospective purchaser of an asset of the estate of the RP Corporations, is not an "aggrieved person" and, therefore, lacks standing to appeal the December 17, 2010 order of the bankruptcy court.

"Whether a claimant has standing is 'the threshold question in every federal case, determining the power of the court to entertain the suit.'" Licensing by Paolo, Inc. v. Sinatra (In re Paolo Gucci), 126 F.3d 380, 387-88 (2d Cir. 1997) (quoting Warth v. Seldin, 422 U.S. 490,

498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). "[C]ourts have consistently applied a standard * * * permitt[ing] only a 'person aggrieved' to appeal an order of the bankruptcy court." Kabro Associates of West Islip, LLC v. Colony Hill Associates (In re Colony Hill Associates), 111 F.3d 269, 273 (2d Cir. 1997); see also DISH Network Corp. v. DBSD North America, Inc. (In re DBSD North America, Inc.), 634 F.3d 79, 89 (2d Cir. 2011); Kane v. Johns-Manville Corp., 843 F.2d 636, 641-42 (2d Cir. 1988). "[A]n 'aggrieved person' is one who is 'directly and adversely affected pecuniarily' by the challenged ruling of the bankruptcy court." Colony Hill, 111 F.3d at 273 (quoting Kane, 843 F.2d at 641); see also Gucci, 126 F.3d at 388 ("To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court.") The "aggrieved person" standard "is stricter than Article III's 'injury in fact' test for standing," Gucci, 126 F.3d at 388; see also DBSD North America, 634 F.3d at 89 ("A[] [bankruptcy] appellant * * * must show not only 'injury in fact' under Article III but also that the injury is 'direct[]' and 'financial'"), and "'reflect(s) the understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order.'" Colony Hill, 111 F.3d at 273 (quoting Kane, 843 F.2d at 642); see also Gucci, 126 F.3d at 388 ("The stringency of [the 'aggrieved person' standard] is rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters.")

Under the "aggrieved person" standard, "an unsuccessful bidder- whose only pecuniary loss is the speculative profit it might have made had it succeeded in purchasing property at an

6

auction- usually lacks standing to challenge a bankruptcy court's approval of a sale transaction." Colony Hill, 111 F.3d at 273; see also Gucci, 126 F.3d at 388 ("[U]nsuccessful bidders usually lack standing to challenge a bankruptcy court's approval of a sale.") A prospective purchaser also lacks standing to challenge a bankruptcy court's disallowance of a proposed sale of an asset of the bankruptcy estate. See, e.g. Austin Associates v. William H. Howison (In re Murphy), 288 B.R. 1, 4 (D. Me. 2002) ("As a general rule, a prospective purchaser of assets from a bankruptcy estate is not within the zone of interests intended to be protected by the Bankruptcy Code and, therefore, does not typically have standing to challenge a sale of the assets to another party."); Calpine Corp. v. O'Brien Environmental Energy, Inc. (In re O'Brien Environmental Energy, Inc.), 181 F.3d 527, 531 (3d Cir. 1999) (holding that generally, creditors have standing to appeal, but disappointed prospective purchasers do not); Davis v. Seidler (In re HST Gathering Co.), 125 B.R. 466, 468 (W.D. Tex. 1991) ("[T]he statutes governing the sale of assets of bankruptcy estates are intended to protect the creditors of such estates and not prospective purchasers. Thus, [the appellant] * * * lacks standing to appeal because, as a prospective purchaser, he is not within the 'zone of interests intended to be protected' under the bankruptcy statutes and regulations.")

However, "the rule denying standing to unsuccessful bidders is not absolute." Colony Hill, 111 F.3d at 273; see also Gucci, 126 F.3d at 388 ("[T]he rule that purports to deny standing to unsuccessful bidders is not unvarying * * * but is affected by those concerns the Bankruptcy Code was enacted to protect.") An unsuccessful bidder has standing to challenge the "intrinsic fairness" of a bankruptcy sale, i.e., that the sale was tainted by fraud, bad faith, collusion, deceit, mistake or unfairness. Gucci, 126 F.3d at 388; Colony Hill, 111 F.3d at 274.

It is undisputed that appellant is not a creditor of the estate of the RP Corporations. Nor

7

was an order approving the sale ever entered by the bankruptcy court. Contrary to appellant's contention, even assuming, *arguendo*, that the bankruptcy court's statement that it "will grant" the Sale Motion effectively granted the Sale Motion absent entry of any such order, the sale to appellant was not consummated at that time. Rather, the Sale Motion only sought authorization to sell Claim No. 28 to appellant "subject to higher or better offers," thus contemplating that a sale would be held at a later date, after authorization was granted therefor and third parties were given an opportunity to submit "higher or better offers." No bankruptcy sale of Claim No. 28 was ever scheduled and no deadline for the submission of any "higher or better offers" by other prospective purchasers of Claim No. 28 was ever designated following the bankruptcy court's purported approval of the sale. Contrary to appellant's contention, the notice of the Sale Motion seeking authorization for the sale that had been served upon all creditors and parties in interest did not constitute a notice of sale of Claim No. 28 to appellant. There is no evidence in the record that a notice of sale of Claim No. 28 to appellant was ever served upon any creditor or party in interest. Moreover, any order granting the Trustee authorization to sell Claim No. 28 to appellant "subject to higher or better offers" would not require the Trustee to, in fact, sell that asset to appellant. Accordingly, appellant was never a successful purchaser of any property of the estate of the RP Corporations, but was merely an unsuccessful prospective purchaser of such property.

Moreover, appellant's deposit was returned to her upon withdrawal of the Sale Motion and the loss of any profit she hoped to gain from acquiring Claim No. 28 "is too speculative a harm to constitute injury to property for purposes of the standing test." O'Brien Environmental Energy, 181 F.3d at 531. Accordingly, appellant does not have standing as a prospective

8

purchaser of Claim No. 28 to appeal the December 17, 2010 order of the bankruptcy court. See, e.g. O'Brien Environmental Energy, 181 F.3d at 531 (finding that the appellant did not have standing to appeal the bankruptcy court's decision to deny approval of a contract for appellant's purchase of the assets of the bankruptcy estate).

Appellant contends, however, that she has standing to appeal the December 17, 2010 order of the bankruptcy court based upon her prenuptial agreement with Wallach. According to appellant, "if [Wallach] successfully reorganizes and pays his unsecured creditors 100% of their allowed claims under a confirmed plan of reorganization, [she] stands to gain fifty cents for every dollar of unsecured debt that is eliminated. * * * Accordingly, if Appellant purchased the Claim [No. 28] and had it reduced from $6,398,000 to the $5,000 purchase price, [she] could gain up to $3,199,000." (Appellant's Memorandum of Law in Opposition to Motion to Dismiss Appeal [App. Opp.], p. 5).

Although the prenuptial agreement is not part of the record on appeal, the issue of appellant's standing, the purpose for which the prenuptial agreement is submitted, was not before the bankruptcy court and the prenuptial agreement presumably is part of the record in the related, albeit separate, Wallach Chapter 11 proceeding. Accordingly, I have considered the prenuptial agreement on the Trustee's motion to dismiss the appeal. See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 389 B.R. 325, 339 (S.D.N.Y. 2008) ("The touchstone for the designation of matter as part of the record [on appeal] is whether the matter was before the lower court (or at least considered by that court) in entering the order of judgment appealed from. * * *. Subject to a narrow exception * * *, if an item was not considered by the [bankruptcy] court, it should be stricken from the record on appeal." (Internal quotations,

9

citations and alterations omitted)); see also Food Distribution Center v. Food Fair, Inc., 15 B.R. 569, 572 (Bankr. S.D.N.Y. 1981) ("The record on appeal should contain all documents and evidence bearing on the proceedings below and considered by the bankruptcy judge in reaching his decision." * * *However, the record on appeal of one matter may be supplemented with materials from other adversary proceedings arising from the same bankruptcy case and, both [sic] materials from cases closely related to the appeal." (Internal quotations and citations omitted)).

Nonetheless, appellant's contention, unsupported by any law, that the prenuptial agreement confers standing upon her to maintain this appeal is without merit. Appellant is merely a nondebtor spouse of a debtor in a separate but related bankruptcy proceeding and, in any event, there is no evidence of any pending divorce proceedings or even that appellant contemplates divorcing her husband. Similarly without merit is appellant's unsupported contention that she has standing based upon her status as "one of the largest creditors in [Wallach's Chapter 11] bankruptcy case, having filed a proof of claim for $17.5 million bifurcated into both a priority claim and an unsecured claim. * * * As an unsecured creditor, Appellant would have a significant interest in reducing the overall pool of unsecured claims in which [she] would have to share any distribution to such class of creditors." (App. Opp., p. 6). The loss of any pecuniary benefit appellant hoped to gain from acquiring Claim No. 28 and eliminating that debt of her husband in the event (a) she ever divorces him or (b) there is a distribution in the Wallach Chapter 11 proceeding to unsecured creditors "is too speculative a harm to constitute injury to property for purposes of the standing test." O'Brien Environmental Energy, 181 F.3d at 531. Both of appellant's contentions would open a floodgate of bankruptcy litigation by individuals only indirectly affected by a bankruptcy proceeding, against which the

"aggrieved person" test for standing was designed to protect.

In addition, appellant contends that she is challenging the intrinsic fairness of the process, pursuant to which the bankruptcy court allowed the Trustee to withdraw the Sale Motion "without any due process of law" after it had orally approved the motion. (App. Opp., p. 9). According to appellant, the Trustee "acted in bad faith and fraudulently in deceiving the Bankruptcy Court that a notice of sale had not been served upon creditors and interested parties and thus, causing the court to believe that the sale had not been complete upon the court's approval thereof." (App. Opp., p. 10). Appellant's contention that the Trustee acted in bad faith and fraudulently is without merit since, *inter alia*, there is no evidence that a notice of sale had ever been served upon creditors and interested parties in the RP Corporations proceeding and the sale to appellant of Claim No. 28 had not, in fact, been completed upon the bankruptcy court's oral approval of the Sale Motion authorizing the sale subject to "higher or better offers." Absent any evidence that the Trustee's withdrawal of the Sale Motion had been tainted by fraud, bad faith, collusion, deceit, mistake or unfairness, see, e.g. Gucci, 126 F.3d at 388; Colony Hill, 111 F.3d at 274, appellant's challenge to the "intrinsic unfairness" of the process is insufficient to confer standing upon her to appeal the December 17, 2010 order of the bankruptcy court. See In re REA Holding Corp., 447 F.Supp. 167, 169 (S.D.N.Y. 1978) ("[U]nless it can be shown that there is some evidence of fraud, deceit, mistake of fact or other inequitable overreaching * * * an unsuccessful bidder[] has no standing to * * * appeal.")

In any event, "where, as here, a trustee proposes to sell assets of the estate, the trustee's business judgment is subject to great judicial deference." O'Brien Environmental Energy, 288 B.R. at 5 (citing In re Bakalis, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998). "The decision of the

11

trustee will not be disturbed 'unless it is shown that the trustee acted in an irrational, arbitrary, or capricious manner, clearly contrary to reason and not justified by the evidence.'" Id. (quoting In re Fas Mart Convenience Stores, Inc., 265 B.R. 427, 431 (Bankr. E.D. Va. 2001) (internal quotations and citation omitted)). The record demonstrates that the Trustee decided to withdraw his Sale Motion once the bankruptcy court expressed trepidation about the sale and he reflected upon those concerns. Accordingly, the Trustee acted in a rational and justifiable manner in seeking to withdraw his Sale Motion in light of the bankruptcy court's express reservations about the sale.

IV.  CONCLUSION

For the reasons stated above, the Trustee's motion to dismiss the appeal is granted and the appeal is dismissed based upon appellant's lack of standing to appeal the December 17, 2010 order of the bankruptcy court.

**SO ORDERED.**

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 16, 2011
       Central Islip, New York

12